# 11-60702-CIV-SEITZ/SIMONTON

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| COMMODITIES ONLINE, LLC AND | ) |
| COMMODITIES ONLINE MANAGEMENT, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

FILED by AJS D.C.

APR 01 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. - MIAMI

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges:

### I. INTRODUCTION

1. The Commission brings this action against Commodities Online, LLC ("Commodities Online") and its manager and primary shareholder, Commodities Online Management, LLC ("Commodities Management") for duping investors into funding a fraudulent scheme and violating the antifraud and registration provisions of the federal securities laws.

2. Since no later than January 2010, Commodities Online claims to have raised approximately $27.5 million by, among other things, offering investment opportunities in purported pre-sold commodities contracts and equity shares of the company. The company granted investors access to a website, where for a six-month subscription fee of $2,000, they could purchase participation units in various commodities contracts. Commodities Online represented to potential investors that it purchased commodities only after arranging for a buyer and seller. It claimed that each transaction made money based on the price spread, and told investors they would "earn 5% or more per month without price speculation."

3. In fact, Commodities Online performed only a limited percentage of the commodities transactions it promised investors. Instead, the company dissipated investor funds by sending millions of dollars to companies controlled by its co-founder and former managing member and one of its vice-presidents.

4. Throughout the scheme, the Defendants fraudulently depicted Commodities Online as a growing and lucrative business. They misrepresented the nature of the company's business model and expected investor returns. Further, Commodities Online failed to disclose to its investors that its co-founder and former managing member is a convicted felon who was, in March 2010, charged with grand theft and organized scheme to defraud in conjunction with an unrelated Ponzi investment scheme. It also failed to disclose that one of its vice-presidents pled guilty to bank fraud and narcotics charges in 2005 and to transmitting a threat to injure charge in 2007. Instead, Commodities Online represented the co-founder as a qualified, experienced businessman and never disclosed the vice-president's criminal history.

5. Through their conduct, the Defendants each have violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5. Unless restrained and enjoined, the Defendants are reasonably likely to engage in future violations of the federal securities laws.

## II. DEFENDANTS

6. Commodities Online is a Florida limited liability company with its principal place of business in Fort Lauderdale. Commodities Online has never been registered with the Commission in any capacity and has not registered any offering of securities under the Securities Act or any class of securities under the Exchange Act.

7. Commodities Management is a Florida limited liability company with its principal place of business in Fort Lauderdale. Commodities Management has never been registered with the Commission in any capacity and has not registered any offering of securities under the Securities Act or any class of securities under the Exchange Act. It is currently Commodities Online's managing member.

### III. JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.

9. This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida because many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Southern District of Florida. For example, the Defendants solicited investors through offices in Fort Lauderdale and Pompano Beach. Additionally, representatives from Commodities Online gave a recruitment presentation in Fort Lauderdale.

10. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

### IV. THE DEFENDANTS' FRAUDULENT OFFERINGS

11. Commodities Online represented itself to investors as being in the business of arranging and funding commodities contracts. The Defendants, through live presentations, Commodities Online's website, and materials provided to prospective investors, claimed to offer

investors the opportunity to fund pre-sold commodities contracts and buy-sell agreements. The Defendants represented to investors that Commodities Online would buy commodities from a producer and then sell them to a manufacturer or wholesaler.

### A. Overview of the Unregistered Offerings

12. One of the three ways Commodities Online raised money from investors was by selling subscriptions to its secured website. For a subscription fee of $2,000, the companies granted investors six months of access to the Defendants' investment products. After paying for the subscription, each investor received a password to enter a restricted-access section of the Commodities Online website. Investors could then select from then-available commodities contracts. For each contract, investors could purchase participation units representing a share of the funding of the commodities purchase. From January 2010 through March 2011, Commodities Online claims it generated subscription income of approximately $1.1 million.

13. The second way the company raised money was by selling participation units in various commodities contracts. Commodities Online represented to investors that each of these units represented funding of a pro rata share of the respective commodities contract. From January 2010 through March 2011, Commodities Online claims it raised at least $24 million in this fashion from investors nationwide. The participation units represented unregistered securities the Defendants were offering and selling.

14. The third way Commodities Online raised money was by selling membership units in the company for $25,000 each. These membership units also represented unregistered securities the Defendants were offering and selling. From January 2010 through March 2011, Commodities Online claims it raised at least $2.4 million in this manner from investors nationwide.

15. No registration statement has been filed or has been in effect with the Commission in connection with the securities the Defendants offered and sold.

### B. Misrepresentations and Omissions

16. In connection with the unregistered securities offerings, the Defendants made numerous material misrepresentations and omissions regarding the nature of Commodities Online's business model and operations, the risks and earnings associated with investing in its securities, and the background of its co-founder and vice-president.

#### *1. Misrepresentations and Omissions Regarding the Promised Investor Return*

17. The Defendants ran a fraudulent scheme that depended on recruiting new investors to function, and which, by definition, was going to fail and leave investors with substantial losses. While promising investors positive investment gains, in truth, the Defendants did not earn any net profits from the entities they dealt with in connection with these purported commodities contracts. In fact, the Defendants never earned profits from either a single entity or in total from these entities.

18. Instead, Commodities Online held itself out as providing a viable, profitable investment vehicle to prospective investors. According to its website:

> Commodities Online is a commodities wholesaler with a unique and innovative investment opportunity, offering pre-sold contracts and buy-sell agreements. We buy from a producer, for example iron ore in Mexico, then sell to a manufacturer or wholesaler. Before we purchase the commodity, we already have a buyer and contract in place. We know what the profit will be.

19. The Defendants approved and directed the creation and distribution of all of Commodities Online's offering materials, including a Master Subscription Agreement, correspondence, sample commodities contracts, and other materials. The Defendants represented to investors through, among other things, the Master Subscription Agreement, they could offer investors participation units because of relationships with affiliate companies. The

Defendants also represented to investors they would share profits on the commodities transactions as follows: 10% to the affiliate company, 30% to Commodities Online, and 60% to investors.

20. On December 15, 2010, Commodities Online announced on its website that "[t]o date, we have 32 contract offerings that have been completed for which our steadfast subscribers have been paid. The dollar total of these contracts is approximately $7.5 million and the payout was in excess of $8.5 million, producing an average earning of over 14.5%." That statement was untrue. There is no evidence to support this amount of investor return. In fact, Commodities Online's bank records show a net loss for the companies associated with these promised contracts. Further, the company's records show a net outflow of cash for each of these associated companies.

21. In a press release dated March 14, 2011, Commodities Online stated that since its inception it had offered and paid a total of 48 contracts, and that "[a]ll completed contracts have returned the promised levels of profit to the investors." That statement was also untrue because all completed contracts did not return the promised levels of profit to investors. In fact, Commodities Online's bank records reveal that the company has operated at a loss, and there are substantial net cash outflows to every entity that plausibly could be a party in commodities transactions. Despite Commodities Online's repeated assurances about its success in funding profitable commodities contracts, it did not secure the profitable contracts it promised to investors.

### 2. Misrepresentations and Omissions Regarding Their Officers' Prior Criminal Histories

22. In January 2010, Commodities Online's co-founder and managing member appeared on behalf of the company at an investor pitch event at the W Hotel in Fort Lauderdale.

He touted his experience in commodities trading and his business background. However, the Defendants failed to disclose that in 1997, he was convicted of federal narcotics and firearms felonies and sentenced to 57 months in prison. The Defendants never disclosed his past criminal background to investors either through the Commodities Online website or any other company communication to investors.

23.   In 2005, one of Commodities Online's vice-presidents pled guilty in the United States District Court for the District of New Jersey to bank fraud and narcotics charges. In 2007, in the same court, he pled guilty to transmitting a threat to injure. He is currently serving a three-year term of supervised release, which expires in July 2011. The Defendants failed to disclose these facts to investors either through the Commodities Online website or any other company communication to investors.

## V. CLAIMS FOR RELIEF

### COUNT I

### Sales of Unregistered Securities in Violation of Sections 5(a) and 5(c) of the Securities Act

24.   The Commission repeats and realleges paragraphs 1 through 23 of its Complaint.

25.   No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions described in this Complaint, and no exemption from registration exists with respect to these securities and transactions.

26.   Starting no later than January 2010, Commodities Online and Commodities Management, directly and indirectly, have been: (a) making use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise; (b) carrying securities or causing such securities to be carried through the mails or in interstate commerce, by any means or instruments of

transportation, for the purpose of sale or delivery after sale; or (c) making use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, without a registration statement having been filed or being in effect with the Commission as to such securities.

27. By reason of the foregoing, the Commodities Online and Commodities Management have violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT II

### Fraud in Violation of Section 17(a)(1) of the Securities Act

28. The Commission repeats and realleges paragraphs 1 through 23 of its Complaint.

29. Starting no later than January 2010, Commodities Online and Commodities Management, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, have been knowingly, willfully or recklessly employing devices, schemes or artifices to defraud.

30. By reason of the foregoing, Commodities Online and Commodities Management, directly and indirectly, have violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a).

## COUNT III

### Fraud in Violation of Sections 17(a)(2) and 17(a)(3) of the Securities Act

31. The Commission repeats and realleges paragraphs 1 through 23 of its Complaint.

32. Starting no later than January 2010, Commodities Online and Commodities Management, directly and indirectly, by use of the means or instruments of transportation or

communication in interstate commerce and by the use of the mails, in the offer or sale of securities, have been: (a) obtaining money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or (b) engaging in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

33. By reason of the foregoing, Commodities Online and Commodities Management, directly and indirectly, have violated and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

## COUNT IV

### Fraud in Violation of Section 10(b) and Rule 10b-5 of the Exchange Act

34. The Commission repeats and realleges paragraphs 1 through 23 of its Complaint.

35. Starting no later than January 2010, Commodities Online and Commodities Management, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, have been knowingly, willfully or recklessly: (a) employing devices, schemes or artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

36. By reason of the foregoing, Commodities Online and Commodities Management have directly or indirectly violated and, unless enjoined, are reasonably likely to continue to

violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that the Defendants have committed the violations of the federal securities laws alleged herein.

### II.

### Permanent Injunction

Issue a Permanent Injunction restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 of the Exchange Act [17 C.F.R. § 240.10b-5], as indicated above.

### III.

### Disgorgement

Issue an Order directing the Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### IV.

### Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act. [15 U.S.C. §§ 77t(d), 78u(d)].

## V.

## **Further Relief**

Grant such other and further relief as may be necessary and appropriate.

## VI.

## **Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

April 1, 2011          By:    s/ James M. Carlson

James M. Carlson
Senior Trial Counsel
Florida Bar # A5501534
Telephone: (305) 982-6328
Facsimile: (305) 536-4154
E-mail: CarlsonJa@sec.gov

ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154