UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60702-CIV-SEITZ/SIMONTON

SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

v.

COMMODITIES ONLINE, LLC
COMMODITIES ONLINE MANAGEMENT LLC,

       Defendants.
_____/

**RECEIVER'S AMENDED MOTION TO DISQUALIFY
THE LAW FIRM OF IVY, MILLER & WALKER, P.A.**

Pursuant to the Court's April 4, 2011, Order, [D.E. 5], David S. Mandel, the court-appointed Receiver of Commodities Online LLC, and Commodities Online Management, LLC (together, "Commodities Online"), files this Amended[1] Motion to disqualify the Law Firm of Ivy, Miller & Walker, P.A, from representing James C. Howard, III ("Howard"), and Sutton Capital, LLC ("Sutton") in this litigation, as well as from representing other former officers or employees of Commodities Online in this litigation, or entities related to Commodities Online or other entities owned or controlled by former officers or employees of Commodities Online in this litigation. As relief, the Receiver requests an evidentiary hearing regarding the Motion. The Receiver makes this Motion in order to defend the interests of the receivership estate and assist in the recovery of stolen investor funds.

---

1   The Receiver files this amended motion to correct an error on page four of the original motion [D.E. 70]. Ms. Ivy, not Ms. Miller, traveled to Mexico with officers and/or employees of Commodities Online.

# INTRODUCTION

The law is well settled that an attorney may not represent another party in a matter against a former client where that party's interest is materially adverse to the interests of the attorney's former client. Moreover, an attorney may not act as an advocate in litigation where the attorney is likely to be a necessary witness in the litigation. Here, the law firm of Ivy, Miller & Walker. P.A., specifically attorneys Rashida M. Ivy and Horecia Walker, is representing Howard and Sutton in their Appeal [D.E. 52, 59] of the Court's Order dated August 23, 2011, [D.E 39] granting the Receiver's Motion [D.E. 24] requiring Howard and Sutton to disgorge $1,450,000 of investor funds transferred by Howard from Commodities Online to Sutton.

Ivy, Miller and Walker, P.A.'s representation of Howard and Sutton is inappropriate for several reasons. First, Ms. Miller and Ms. Ivy previously represented Commodities Online as partners in the now-defunct law firm of Garcia, Ivy and Miller, P.A. ("Garcia, Ivy & Miller, P.A.").[2] Furthermore, it appears likely that the law firm of Garcia, Ivy, & Miller, P.A, improperly received funds belonging to the receivership estate. In addition, Ms. Ivy, Ms. Miller and Ms. Walker were associated together and upon information and belief, represented Commodities Online, during the period of the Ponzi scheme, before the Court appointed the Receiver. Furthermore, Ms. Walker's close association with Ms. Miller and Ms. Ivy in their current three-partner law firm of Ivy, Miller & Walker, P.A., and Ms. Walker's involvement in the Receiver's discussions with all three attorneys regarding the possibility that Garcia, Ivy & Miller P.A. received stolen investor funds makes Ms. Walker a potential witness in the

---

[2] Note that while the law firm of "Garcia, Ivy & Miller, P.A." is still considered "active" according to the Florida Department of State, Division of Corporations with attorney Inger Garcia as the sole partner, in fact, Rashida Ivy and Camille Miller of this law firm resigned as of May 23, 2011. Thus, for purposes of this Motion, the Receiver refers to the law firm of "Garcia, Ivy & Miller" as defunct because the two of the three named partners have left the law firm.

Receiver's litigation strategy to pursue stolen investor funds.  As a result, Ivy, Miller & Walker P.A.'s representation of Howard and Sutton is inappropriate as they potential necessary witnesses in this litigation.  Moreover, due to the failure of Ivy, Miller or Walker to seek or acquire the consent of former client Commodities Online, Ms. Walker should be disqualified through her close association with witnesses Ms. Ivy and Ms. Miller.  In sum, Ms. Ivy, Ms. Miller and Ms. Walker, along with their law firm Ivy, Miller & Walker P.A. should be disqualified under any of these reasons.

## FACTUAL BACKGROUND

As more fully set forth in the April 1, 2011, complaint filed in this matter by the Securities and Exchange Commission ("SEC") [D.E. 1], and the Receiver's Motion for Order Requiring Turnover and Disgorgement [D.E. 24], Commodities Online commenced operations in late January 2010.  Over the ensuing 15 months, Commodities Online operated as a Ponzi-scheme. Under the Ponzi scheme, Commodities Online would represent to investors that Commodities Online would buy commodities from a producer and then sell them to a manufacturer or wholesaler. [D.E. 1, at 4]. In turn, Commodities Online would raise money from investors by purporting to sell them, one or more of the following: a subscription to Commodities Online's website; participation in a commodities contract; or membership interests in Commodities Online itself. [D.E. 1, at 4]. In fact, Commodities Online "performed only a limited percentage of the commodities transactions it promised investors," and dissipated investors' funds by sending millions of dollars to shell companies, some of which were controlled by the former executives of Commodities Online, including but not limited to James Howard and Louis Gallo. [D.E. 1 at 2, D.E. 24].

One of these shell companies that improperly received investor funds is Sutton Capital LLC, which is controlled by Howard. [D.E. 24]. More specifically, in February, 2010, Howard, the co-managing member of Commodities Online, directed the transfer of investor funds totaling $1,450,000 from Commodities Online's bank accounts to Sutton. *Id.*

From the inception of Commodities Online in January, 2010, to the Court's April 4, 2011, Order appointing the Receiver, the law firm of Garcia, Ivy & Miller, P.A. were the attorneys for Commodities Online. During its representation of Commodities Online, upon information and belief, Inger Garcia, Rashida Ivy, Camille Miller & Horecia Walker were associated together and represented Commodities Online. In the course of the law firm Garcia, Ivy & Miller, P.A.'s representation of Commodities Online, the attorneys performed various legal work, including, but not limited to, legal research, drafting of Commodities Online Management's operating agreement, purported contracts between Commodities Online and its investors, lease agreements, and various purported contracts relating the purchase of iron ore in Mexico, as well as advising Commodities Online on its everyday legal affairs. Upon information and belief, Ms. Ivy traveled to Mexico along with former executives and employees of Commodities Online and allegedly viewed the supposed iron ore purchased by Commodities Online during the time period of the Ponzi scheme.

Commodities Online sales office shared space with the law firm of Garcia, Ivy, & Miller, P.A., located at 1940 SE 2nd Street, Pompano Beach, Florida (the "Pompano Beach office"), including sharing a communal kitchen and file storage; as such, Commodities Online executives had easy access to the legal advice of Garcia, Ivy & Miller, P.A. on a day-to-day basis. Further, Garcia, Ivy & Miller, P.A., were paid over $250,000 by Commodities Online. While it is unclear, at this time, the precise scope and extent of each attorney's work for Commodities Online, it is

clear that Camille Miller, Rashida Ivy and upon information and belief, Horecia Walker, all were directly involved at some level with handling legal work for Commodities Online during the operation of the Ponzi scheme.

The law firm of Garcia, Ivy & Miller, P.A., was incorporated on November 11, 2010, with named partners of Inger Garcia, Rashida Ivy and Camille Miller, according to the Florida Department of State Division and Corporations. On January 1, 2011, Garcia, Ivy & Miller, P.A., filed an Annual Report, naming Inger Garcia, Rashida Ivy and Camille Miller as officers of the firm. As of March 3, 2011, Ms. Ivy continued to represent that she was a part of the law firm Garcia, Ivy & Miller, P.A. *See Mora v. Jackson Memorial Foundation*, 07-CV-22239-JAL, D.E. 136, Motion to Quash the Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action, filed by Rashida Ivy, as an attorney at Law Offices of Garcia, Ivy and Miller, P.A (S.D. Fla. Mar. 4, 2011).

Late in the afternoon on Friday, April 1, 2011, when the Receiver took over Commodities Online's Pompano Beach Office, during the process of changing the office's locks, attorneys Miller, Ivy, and Garcia arrived due to an accidental setting-off of the building's security alarm. That same day, Ms. Garcia told the Receiver's counsel that she represented the building's landlord, Louis Gallo, also a former Commodities Online executive.

On May 4, 2011, the Receiver's counsel and forensic accountant were present at Commodities Online's Pompano Beach office; Camille Miller, Rashida Ivy, and Inger Garcia also were present and asked to remove files from the former offices of Commodities Online employees. Also, on various occasions in April and May, these attorneys contacted the Receiver's counsel in an effort to retrieve legal files from Commodities Online's former employee offices.

On or about May 23, 2011, the law firm of Ivy, Miller & Walker, P.A., was established, according to the Florida Department of State, Division of Corporations, with the named partners of Rashida Ivy, Camille Miller and Horecia Walker.  On the same day, Camille Miller and Rashida Ivy filed their individual resignations as partners of Garcia, Ivy & Miller P.A., and Inger Garcia became the sole partner in the law firm Garcia, Ivy & Miller, P.A.

On July 1, 2011, the Receiver's counsel traveled to Pompano Beach to meet with Rashida Ivy, Camille Miller and Horecia Walker at their office.  The purpose of the interview was to inquire about their past completed on behalf of Commodities Online and to obtain any records related to Commodities Online in their possession.  The Receiver's counsel discussed generally the role of the Receiver and the Receiver's intent to pursue investor funds that were wrongfully paid out to "Insiders" and "Related Parties."   Ms. Ivy and Ms. Miller claimed they had no files relating to work done for Commodities Online.  Ms. Miller and Ms. Walker asserted that all documents were left with Ms. Garcia when Ms. Ivy and Ms. Miller left the firm in February 2011. Ms. Miller and Ms. Ivy further claimed they had no data on their computers related to Commodities Online because the computers they used were owned and controlled by Ms. Garcia.

The Receiver's counsel brought certain contract documents from the Commodities Online files to the meeting and showed them to three attorneys.  Ms. Miller identified the documents she had drafted and worked on for Commodities Online.  The Receiver's counsel, Ms. Miller, Ms. Ivy and Ms. Walker reviewed Commodities Online's payments to Garcia, Ivy & Miller, P.A.  Ms. Ivy and Ms. Miller claimed they were unaware a specific $160,000 wire transfer sent by Commodities Online to Garcia, Ivy & Miller, P.A., since they both claimed it went to a separate account at Iberia Bank that only Inger Garcia controlled.  However, Ms. Miller and Ms. Ivy admitted they had

received over $80,000 in payments from Commodities Online for their legal services while partners in the law firm Garcia, Ivy & Miller, P.A.

Approximately one week after the Court entered its Order Requiring Turnover and Disgorgement [D.E. 39], Ivy, Miller & Walker, P.A. filed their notice of appearance on behalf of Howard and Sutton on August 29, 2011. On August 31, 2011, the Receiver's counsel contacted Ivy, Miller & Walker, P.A., and notified them that their representation of Mr. Howard and Sutton was materially adverse to the interests of their former client Commodities Online and that, on behalf of Commodities Online, the Receiver did not consent to their representation. The Receiver requested that Ivy, Miller & Walker, P.A. immediately withdraw from their representation of Howard and Sutton in this litigation. On September 1, 2011, Ivy, Miller & Walker, P.A., refused.

## MEMORANDUM OF LAW

I. **Ivy, Miller & Walker's Representation of Howard and Sutton in this Litigation is Inappropriate Because Howard and Sutton Have Interests Materially Adverse to Ivy, Miller & Walker's Former Clients, Commodities Online**

   a. **Ivy, Miller & Walker's Representation of Howard and Sutton Violates the Court's April 1, 2011, Order**

Pursuant to Paragraph 13 of the Order Appointing Receiver,

> The Defendants and their principals, respective offices, agents, employees, and *attorneys-in-fact, shall cooperate with and assist the Receiver*. The Defendants and their principals, and respective officers, agents, employees, *attorneys, and attorneys-in-fact shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver* in the conduct of the Receiver's duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choices of action described above[.]

*See* D.E. 5 at 5 (italics added). According to this Paragraph, any attorneys that previously represented Commodities Online shall cooperate with the Receiver, and shall not hinder, obstruct

or interfere with the Receiver's duties, including the recovery of stolen investor funds on behalf of the receivership estate.

Here, Ms. Ivy and Ms. Miller, and upon information and belief, Ms. Walker, previously represented Commodities Online during Commodities Online's operation of the Ponzi scheme that stole millions of dollars from investors. Ivy, Miller and Walker's representation of Mr. Howard, who facilitated the Ponzi scheme as an former officer of Commodities Online, and Sutton, a company that illegally received stolen investor monies from Commodities Online, is directly adverse the Receiver's goal of recovering monies stolen by the former executives of Commodities Online on behalf of investors.  Clearly, Ivy, Miller and Walker representation of Mr. Howard and Sutton cannot be considered consistent with the Court's April 1st Order directing Commodities Online and its attorneys to "cooperate with and assist the Receiver."  Furthermore, Ivy, Miller & Walker's representation of Mr. Howard and Sutton in this litigation against the Receiver's disgorgement action to recover stolen investor monies is an action that directly "hinders, obstructs [and] otherwise interferes" with the Receiver's duties to recover investor funds on behalf of the receivership estate.  Accordingly, Ivy, Miller and Walker's representation violates Paragraph 13 of the Court's April 1st Order, and the law firm should be disqualified.

### b. Ivy, Walker & Miller's Representation of Mr. Howard and Sutton Violates Rules Regulating Florida Bar, 4-1.9

Attorneys practicing in the Southern District of Florida are governed in their professional conduct by the Rules Regulating the Florida Bar. S.D. Fla. L.R. 11(c).  When a motion to disqualify "is based on an allegation of ethical violation, the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power. The court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule" in order to disqualify the

attorney. *Schlumberger Tech., Inc. v. Wiley,* 113 F.3d 1553, 1561 (11th Cir. 1997). "An order involving the disqualification of counsel must be tested against the standards imposed by the [Florida Bar] Rules of Professional Conduct." *Estright v. Bay Point Improvement Ass'n, Inc.,* 921 So.2d 810, 811 (Fla. 1st DCA 2006) (quoting *Morse v. Clark,* 890 So.2d 496, 497 (Fla. 5th DCA 2004))

Rule 4-1.9 of the Rules Regulating the Florida Bar, titled "Conflict of Interest; Former Client," states, in the relevant part:

> A lawyer who was formerly represented a client in a matter shall not thereafter:
>
> (a)  represent another person in the same or a substantially similarly related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>
> . . .

R. 4-1.9(a), Rules Regulating the Florida Bar.

In the Eleventh Circuit, to prevail on a motion to disqualify pursuant to Rule 4-1.9, the moving party must show that: (1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client. *Smalley Transp. Co. v. Prime Computer Inc.,* 137 F.R.D. 397, 398 (M.D. Fla. 1991); *Cox v. Am. Cast Iron Pipe Co.,* 847 F.2d 725, 728 (11th Cir. 1988); *Bochese v. Town of Ponce Inlet,* 267 F.Supp.2d 1240, 1244 (M.D. Fla. 2003). *see also State Farm Mut. Auto. Ins. Co. v. K.A.W.,* 575 So.2d 630, 633 (Fla. 1991).

### 1. The Existence of a Prior Attorney-Client Relationship

In the instant case, it is undisputed that an attorney-client relationship existed between

attorneys Ivy, Miller & Walker and Commodities Online, during their representation of Commodities Online through the law firm of Garcia, Ivy & Miller, P.A. Therefore, according to Florida law, an irrefutable presumption arises that confidences were disclosed between said attorneys and Commodities Online. *In re Weinhold,* 380 B.R. 848, 853 (Bkrtcy. M.D .Fla. 2007) (citing *State Farm Mut. Auto. Ins. Co. v. K.A.W.,* 575 So.2d 630, 633 (Fla. 1991); *In re Skyway Commc'n Holding Corp.*, 415 B.R. 859, 867 (Bankr. M.D. Fla. 2009).

Moreover, this irrefutable presumption extends not only to the attorney at the firm directly working with the former client but to all members of the law firm that is representing the client. *In re Outdoor Prods. Corp.,* 183 B.R. 645, 648 (Bkrtcy.M.D. Fla. 1995) (stating that "[u]pon a showing there is an attorney-client relationship, there is a presumption [that] there was a confidential relationship and confidential information was transferred to all members of a firm by the client."); *Castro v. State,* 597 So. 2d 259, 260 (Fla. 1992) ("a lawyer's ethical obligations to former clients generally require disqualification of the lawyer's entire firm where any potential for conflict arises."); *Brotherhood Mut. Ins. Co. v. Nat'l Presto Indus., Inc.,* 846 F.Supp. 57, 59 (M.D.Fla. 1994). Thus, in the instant case, regardless of which attorney or attorneys at Ivy, Miller & Walker, P.A., purports to represent Howard and Sutton, the entire firm is disqualified from the representation due to the prior attorney-client relationship with Commodities Online. *See id.*

### 2. **Attorneys Ivy, Miller & Walker's Prior Representations of Commodities Online Is Substantially Related to the Instant Case**

The second prong of an analysis under Rule 4-1.9, is that the former client's matters be "substantially related" to the matter being dealt with in the instant matter. As the comment to Rule 4–1.9 states, matters are "substantially related" if they "involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client." To be "substantially related," the matters "need only be akin to the present

action in a way reasonable persons would understand as important to the issues involved." *McPartland v. ISI Inv. Servs., Inc.,* 890 F.Supp. 1029, 1031 (M.D.Fla. 1995). The question of "whether the two matters are substantially related depends upon the specific facts of each particular situation or transaction." *The Florida Bar v. Dunagan,* 731 So. 2d 1237, 1240 (Fla. 1999).

In the instant case, through the firm of Garcia, Ivy & Miller, P.A., upon information and belief, attorneys Ivy, Miller and Walker provided legal representation to Commodities Online, including legal research, preparation and review of purported contracts, and day-to-day legal advice to the business needs of Commodities Online during the operation of the Ponzi scheme. Attorneys Ivy, Miller and Walker's representation of Commodities Online during the operation of the Ponzi scheme is substantially related to the pending case before the Court, and the Receiver's actions seeking to recover funds stolen from investors by the former executives of Commodities Online during the operation of the Ponzi scheme and fraudulently transferred to related companies and individuals, including Howard and Sutton Capital, LLC. Specifically in the context of Ponzi scheme litigation, one district court has found that an attorney representing the company may not subsequently represent the company's officers or directors in a suit by the company or a receiver against said officers or directors on matters in which the attorney was directly involved. *Burnett v. Rowzee,* 2007 WL 2767936 (C.D. Cal. 2007). Similarly here, the Court should disqualify attorneys Ivy, Miller and Walker from representing Howard, a former executive of Commodities Online, or Sutton, a related company that received stolen investor funds.

**II.     Ivy, Miller and Walker Are Necessary Witnesses to the Receiver's Investigation and Litigation of Recovery of Stolen Investor Funds**

Pursuant to Rule 4-3.7 of the Rules Regulating the Florida Bar:

>    (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client *unless:*
>
>    (1) the testimony relates to an uncontested issue;
>
>    (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
>
>    (3) the testimony relates to the nature and value of legal services rendered in the case; or
>
>    (4) disqualification of the lawyer would work substantial hardship on the client.

R. 4-3.7(a), Rules Regulating The Florida Bar.

The comment to Rule 4-3.7(a) notes "that the problem 'can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party.'" *United States v. Abbell*, 939 F.Supp. 860, 863 (S.D. Fla. 1996) (citing Comment, Rule 4-3.7, Rules Regulating the Florida Bar). As the comments and Florida case law bear out, the purpose of Rule 4-3.7 is to prevent the evils that arise when a lawyer dons the hats of both an advocate and witness as "[s]uch a dual role can prejudice the opposing side or create a conflict of interest." *Scott v. State*, 717 So. 2d 908, 910 (Fla. 1998); *see also,* Comment, Rule 4-3.7, Rules Regulating the Florida Bar ("[t]he opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation.")

While disqualification of an attorney is an extraordinary remedy to be resorted to only sparingly, such a remedy is appropriate "when it is shown that the attorney will be an indispensable witness or when the attorney becomes a 'central figure' in the case." *Fleitman v. McPherson*, 691 So. 2d 37, 38 (Fla. 1st DCA 1997) (citing *Ray v. Stuckey,* 491 So.2d 1211, 1214 (Fla. 1st DCA 1986); *see also, Suchite v. Kleppin*, 10-21166-CIV, 2011 WL 1833183 (S.D. Fla. 2011) (disqualifying attorney from representing co-defendant pursuant to Rule 4-3.7); *Eccles v.*

*Nelson*, 919 So. 2d 658, 660 (Fla. 5th DCA 2006) (disqualifying attorney who would be a witness to the issues in dispute between the parties); *United States v. Abbell*, 939 F.Supp. 860 (S.D. Fla. 1996) (disqualifying criminal defendant's counsel who was slated to be witness at trial); *In re Captran Creditors Trust,* 104 B.R. 442 (Bankr. M.D. Fla 1989) (disqualifying defendant's counsel pursuant to Rule 4-3.7 and 4-1.7); *Foster-Thompson, LLC v. Thompson*, 2006 WL 269979 (M.D. Fla. 2006).

Here, Ivy, Miller and Walker, are necessary witnesses in this dispute in several respects, including but not limited to, the various types of legal work performed by Garcia, Ivy & Miller, P.A. for Commodities Online, which may have been used by the participants in the Ponzi scheme, and under what circumstances funds were transferred from Commodities Online to the firm, either as payment for legal services or for some other purpose. Ms. Miller and Ms. Ivy admitted that they received over $80,000 from Commodities Online while employed with the law firm of Garcia, Ivy, & Miller, P.A. The Receiver is investigating the potential recovery of the $250,000 that Commodities Online paid to Garcia, Ivy & Miller P.A., as improperly transferred investor funds. Ms. Miller and Ms. Ivy's representations regarding their knowledge of receipt of these funds and their provision of services will be instrumental to the Receiver's action to recover these monies. Ms. Miller and Ms. Ivy provided direct legal services to Commodities Online during the operation of the Ponzi scheme – to the extent the Receiver can recover all or a portion of the $250,000 will depend on their testimony.

Furthermore, to the extent that Ms. Walker has knowledge of Ms. Ivy and Ms. Miller's representations during the meeting with the Receiver on July 1, 2011, and her knowledge of Ms. Ivy and Ms. Miller's receipt of stolen investor funds from Commodities Online due to her close association with Ms. Ivy and Ms. Miller in their three-partner law firm, the Receiver anticipates

calling on Ms. Walker as a witness in this litigation. Accordingly, Ms. Ivy, Ms. Miller and Ms. Walker should be disqualified as potential witnesses in this litigation.

**III.    In the Alternative, Ms. Walker Should Be Excluded By Her Association With Ms. Miller and Ms. Ivy Under Rule 4-3.7(b) as Witnesses in This Litigation**

Pursuant to Rule 4-3.7(b) of the Rules Regulating the Florida Bar:

> (b) Other Members of the Law Firm as Witnesses. A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by rule 4-1.7 or 4-1.9.

R. 4-3.7(b), Rules Regulating the Florida Bar. Under the Comments to Rule 4-3.7(b), "If . . ., [a] testifying lawyer would also be disqualified by rule 4-1.7 or 4-1.9 from representing the client in the matter, other lawyers in firm will be precluded from representing the client by rule 4-1.10, unless the client give informed consent under the conditions stated in rule 4-1.7."

Under Rule 4-1.7, the both former client and current client must provide informed consent when a conflict of interest arises. Specifically, Rule 4-1.7 states, in the relevant part, that,

> (a) **Representing Adverse Interests**. Except as provided in subdivision (b), a lawyer shall not represent a client if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) **Notwithstanding** the existence of a conflict of interest under subdivision(a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.

R. 4-1.7 (a) & (b), Rules Regulating The Florida Bar. In the Comments to this Rule 4-1.7(b), the Florida Bar states that while a client may consent to representation notwithstanding a conflict, "when more than one client is involved, the question of conflict of must be resolved as to *each* client." (emphasis added).

Rule 4-1.10 relates to imputation of conflicts of interests, and in relevant part states as follows,

(a) **Imputed Disqualification of All Lawyers in Firm**. While lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

(b) **Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.

(c) **Representing Interests Adverse to Clients of Formerly Associated Lawyer.** When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

> (2) any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
>
> (d) **Waiver of Conflict.** A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.

R. 4-1.10 (a)-(d), Rules Regulating The Florida Bar.  The Comments of this Rule set forth that "The rule of imputed disqualification stated in subdivision (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm."  Further, "Subdivision (a) operates only among the lawyers currently associated in a firm."  According to the Comments, the rule of imputation should be applied to "preserving confidentiality and avoiding positions adverse to a client."  Moreover, the Comments direct that,

> Rule 4-1.10(d) removes imputation with the informed consent of the *affected* client or *former* client under the conditions set forth in rule 4-1.7. The conditions stated in rule 4-1.7 require the lawyer to determine that the representation is not prohibited by rule 4-1.7(b) and that *each* client or *former client* has given informed consent to the representation, confirmed in writing or clearly stated on the record.  In some cases, the risk may be severe that the conflict may not be cured by client consent.

(emphasis added).

Under these conflict rules, an entire law firm can be excluded by association with a testifying lawyer.  *See Omni Developments, Inc. v. Porter*, 459 F.Supp. 930 (S.D. Fla. 1978). (entire law firm was disqualified); *see also Suchite v. Kleppin*, 10-21166-CIV, 2011 U.S. Dist. LEXIS 59166 (S.D. Fla. Mar. 15, 2011) (a lawyer may not act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness when precluded from doing so by rule 4–1.7 or 4–1.9).

Turning to the facts before the Court, under Rules 4-3.7(b), 4-1.7, 4-1.10, Ms. Walker should be precluded from representing Mr. Howard and Sutton due to her current close association with Ms. Ivy and Ms. Miller in the firm Ivy, Miller & Walker, P.A, and the necessity of Ms.

Walker, Ms. Miller's and Ms. Ivy's testimony as a witnesses in this litigation.  As set forth above, the interests of Ms. Ivy and Ms. Walker's current clients, Mr. Howard and Sutton, are materially adverse to the interests of their former client of Commodities Online in violation of Rule 4-1.9. More importantly under Florida Bar Rule 4-3.7(a), Ms. Miller and Ms. Ivy are necessary witnesses in this litigation relating to their work performed for Commodities Online, and, indeed as potential targets for the recovery of stolen investor funds due to their former association with Garcia, Ivy, & Miller, P.A.  As a result, both attorneys should be disqualified from this case.

Accordingly, in light of the witness status of Ms. Ivy and Ms. Miller under Rule 4-3.7(b) in this litigation, Ms. Walker should also be disqualified (absent the informed consent of Commodities Online), due to her close association with Ms. Miller and Ms. Ivy in their current three-partner law firm.  As the representative of Commodities Online, an adverse and "affected" former client under the Florida Bar Rules, the Receiver has not consented to Ms. Walker, Ms. Ivy, or Ms. Miller's representation of Howard and Sutton, and in fact, specifically objects to their representation of Howard and Sutton.  Therefore, under the Florida Bar Rules 4-3.7(b), 4-1.7, 4-1.10, Ms. Walker should be disqualified from representing Mr. Howard and Sutton in this litigation, along with Ms. Ivy and Ms. Miller due to her association in the three-partner law firm of Ivy, Miller & Walker, P.A.

**IV.     The Receiver Respectfully Requests a Hearing to Address His Motion To Disqualify**

"Where there is a dispute over the disqualification of an attorney and the parties do not agree on the issue presented, an evidentiary hearing is necessary." *Quality Air Conditioning Co., Inc. v. Vrastil*, 895 So. 2d 1236, 1238 (Fla. 4th DCA 2005) (remanding decision to disqualify corporation's attorney without an evidentiary hearing); *see, Sch. Bd. of Broward County v. Polera Bldg. Corp.,* 722 So. 2d 971 (Fla. 4th DCA 1999); *Holland v. Tenenbaum,* 360 So.2d 493 (Fla. 4th DCA 1978) (holding that disqualification of counsel is a serious matter which should be done after

an adequate hearing). Thus, the Receiver requests an evidentiary hearing regarding the disqualification of Ivy, Miller & Walker, P.A. and attorneys Ivy, Miller & Walker.

## CONCLUSION

In sum, the Receiver respectfully requests that: (a) the Court conduct an evidentiary hearing to determine whether the law firm Ivy, Miller & Walker, P.A. and attorneys Ivy, Miller and Walker, should be disqualified from representing defendant Howard and Sutton, as well as from representing other former officers or employees of Commodities Online, or entities related to Commodities Online, or other entities owned or controlled by former officers of employees of Commodities Online; and (b) such other and further relief as the Court deems necessary.

Dated: September 8, 2011

Respectfully submitted,

MANDEL & MANDEL LLP
1200 Alfred I. duPont Building
169 East Flagler Street
Miami, Florida 33131
Telephone: 305.374.7771
Facsimile: 305.374.7776
nsmandel@mandel-law.com


By: /s/ Nina Stillman Mandel
NINA STILLMAN MANDEL
   Florida Bar No.: 843016
CAMELLIA NORIEGA
   Admitted Pro Hac Vice


BARCLAY CALE, P.A.
169 East Flagler Street, Suite 1200
Miami, Florida 33131
Miami, Florida 33131
Telephone: (305) 416-3611
Facsimile: (305) 416-3612
bcale@calelaw.com

*Counsel for the Receiver, David S. Mandel*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed by CM/ECF this 8th day of September, 2011.

/s/ Nina Stillman Mandel
NINA STILLMAN MANDEL