UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60702-CIV-SEITZ/SIMONTON

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

COMMODITIES ONLINE, LLC
COMMODITIES ONLINE MANAGEMENT LLC,

    Defendants.
_____/

**RECEIVER'S REPLY MEMORANDUM IN SUPPORT OF
RECEIVER'S AMENDED MOTION TO DISQUALIFY
THE LAW FIRM OF IVY, MILLER & WALKER, P.A.**

    David S. Mandel, the court-appointed Receiver of Commodities Online LLC, and Commodities Online Management, LLC (together, "Commodities Online"), files this reply memorandum in further support of the Receiver's Amended Motion to disqualify the Law Firm of Ivy, Miller & Walker, P.A, from representing James C. Howard, III ("Howard"), and Sutton Capital, LLC ("Sutton") in this litigation, as well as from representing other former officers or employees of Commodities Online in this litigation, or entities related to Commodities Online or other entities owned or controlled by former officers or employees of Commodities Online in this litigation. As relief, the Receiver requests an evidentiary hearing regarding the Motion. The Receiver makes this Motion in order to defend the interests of the receivership estate and assist in the recovery of stolen investor funds.

    In its responsive memorandum, counsel fails to address clear import of specific Rules Regulating the Florida Bar, to wit, Rules 4-1.9 (former client) and 4-1.10a (imputation). Taken together, these rules establish a threshold over which the current law firm of Ivy, Miller &

Walker, P.A., cannot pass in its efforts to represent not only James Howard III and Sutton Capital, LLC, but also corporate entities and individuals that are either contesting the Receiver's authority or refusing to cooperate with the Receiver in his execution of his responsibilities. The law firm's response that specific attorneys, that is, Ms. Ivy and Ms. Walker did not have "a working relationship with Commodities Online" is not an adequate analysis of the conflict of interest provisions of the Florida Bar Rules. The knowledge of the attorneys who represented and worked for Commodities Online regarding matters specifically and substantially related to the issues before the Court in this case is imputed to the entire law firm of three attorneys, establishing an irrefutable presumption that confidences were revealed.

## MEMORANDUM

### I.   Ivy Miller & Walker P.A. should be disqualified

It is undisputed that from early October 2010,[1] attorneys Rashida Ivy, Camille Miller, and Inger Garcia worked together in the law firm, "Garcia, Ivy & Miller, P.A." As a law firm, these attorneys performed legal work for the principals of Commodities Online and for the entity, including drafting many of the key documents relating to the formation and activities of Commodities Online. These documents included Commodities Online's operating agreement, various contracts allegedly for the purchase of Mexican iron ore, (which was an integral part of the ponzi scheme), brokerage and escrow agreements relating to the iron ore, and others.

Based on emails that the Receiver has reviewed, it appears that both Ms. Garcia and Ms. Miller played active roles in discussing these documents with each other and with the Commodities Online principals. Further, the law firm was paid for the legal services rendered.

---

[1] Note that counsel's responsive memorandum erroneously states *October 1, 2011*, [D.E. 91, p. 2, par. 5) as the date that Ms. Ivy joined Ms. Garcia and Ms. Miller in their law practice; this date should be October 1, 2010, with the subsequent formation of "Garcia, Ivy and Miller, P.A." on November 1, 2010.

It appears that Ms. Ivy participated to some extent in discussing or reviewing documents. The legal work was performed from at least October 2010 through March 2011. After Commodities Online became aware that the SEC was investigating its activities in March 2011, attorneys Garcia and Ivy traveled to Mexico purportedly to inspect the iron ore, arguably on behalf of the entity as well as their individual client, Louis Gallo. Mr. Gallo was one of the principal actors in Commodities Online, although his name did not appear on the corporate documents.

In fact, attorneys Garcia and Ivy represented the principals of Commodities Online in other matters, including having filed appearances for Mr. Gallo and Mr. Howard in various criminal and civil proceedings. Based on the representation of Commodities Online by at least two, if not all, of the attorneys at Garcia Ivy and Miller, and the membership of Ivy and Miller in the successor law firm of Ivy Miller and Walker, the law firm should be disqualified under the Rules Regulating the Florida Bar.

> "The rule of imputed disqualification is intended to "give effect to the principle of loyalty to the client as it applies to lawyers who practice in the same firm." *R. Regulating Fla. Bar. 4-1.10*. The rule is premised on the generally accepted notion **that a law firm is essentially one lawyer** and is thus vicariously bound by the obligation of loyalty owed by each lawyer associated in the firm. *Id*.

*Metcalf v. Metcalf*, 785 So.2d 747, 749 (Fla. 5th DCA, 2001).

The court must apply a two-prong test – 1) whether a prior attorney-client relationship existed; and 2) whether the matters in the pending lawsuit are substantially related to the previous matter in which the attorney was counsel.

1. <u>Prior Attorney-Client Relationship Has Been Established</u>

As noted in the *Metcalf* case, "the law does not require a long or complicated attorney/client relationship to fulfill the requirements for disqualification, and it is not necessary to prove that confidential communications were disclosed because once the relationship is

established, an **irrefutable presumption arises that confidence were revealed to the attorney.**" *Id*. at 749; *see also In Re Weinhold*, 380 B.R. 848, 853 (Bkrtcy. M.D. Fla. 2007) (stating that "since the existence of a prior attorney-client relationship was established in this case, therefore, an irrefutable presumption arose that [the law firm] received confidential information from the [former client] during the course of the representation.").

In order to assess whether was a prior attorney-client relationship, the case of *Morgan Stanley DW, Inc., v. Kelley & Warren, P.A.,* 2002 U.S. Dist. 28107 (S.D. Fla. May 9, 2002; case no. 02-80225-Civ-Ryskamp), is instructive.  There, the plaintiff moved to disqualify the defendant law firm based on its prior representation of the plaintiff.  From 1990 to 1998, the law firm of Kelley, Aldrich, & Warren, P.A. represented the plaintiff.  In 1999, the law firm changed – Aldrich left and the firm became Kelley & Warren, P.A.  Although Aldrich had performed much of the legal for the plaintiff, it was undisputed that Kelley "occasionally represented" the predecessor firm to the plaintiff.  As Judge Ryskamp noted, "[d]espite the technical re-characterization of firm distinctions and dissolutions, Mr. Kelley, as an individual attorney, **at minimum**, admits to an actual attorney-client relationship." *Id.* at *8.  Thus, the first prong of the test as to prior attorney-client relationship was established.  *Id.*

Similarly, here, it is undisputed that Camille Miller represented Commodities Online and performed substantial legal work for Commodities Online; counsel's response to this motion concedes that Ms. Miller "may be conflicted off this matter."

2.   <u>The Pending Matter is Substantially Related to the Previous Representation</u>

The test that is applied is the "substantial relationship" test.  "Where an attorney represents a party in a matter in which the adverse party is that attorney's former client, the attorney will be disqualified if the subject matter of the two representations are 'substantially

related.'" *Federal Deposit Insurance Corp. v. Ellis, et al.,* 140 F.R.D. 660, 675 (N.D. Al. 1985), quoting *Dodson v. Floyd*, 529 F. Supp. 1056, 1060 (N.D. Ga. 1981). In *Morgan Stanley*, the plaintiff stated that the defendant "was privy to confidential and proprietary information regarding" the plaintiff, which "could be used, inadvertently or otherwise," to the plaintiff's disadvantage. 2002 U.S. Dist. 28107, *11. The court found that the matters were substantially related, and that the defendant law firm possessed confidential information that posed a threat of disclosure which would be detrimental to the plaintiff. *Id.* at 12. *See also, Springtree Country Club Plaza, Ltd. v. Blaut*, 642 So.2d 27 (Fla. 4th DCA 1994) (respondent's law partners were privy to confidential information derived from prior representation).

The subject matter of the current litigation regarding Commodities Online's ponzi scheme is substantially related to the legal work provided by Garcia, Ivy & Miller, P.A., which has been imputed to the law firm of Ivy, Miller & Walker, P.A. Clearly the firm's review and analysis of legal issues, including preparation of the alleged contracts and other legal documents relating "commodities" transactions is an essential component of the ponzi scheme. Thus, the law firm possesses confidential information regarding Commodities Online, which could be used against its former client, Commodities Online, as well as to the advantage of James Howard, and other former principals and entities that received fraudulently-obtained investor funds. Accordingly, the Receiver has met the substantial relationship prong of the disqualification test.

  3. <u>The Receiver Has Not Waived the Law Firm's Conflict of Interest.</u>

Respondent law firm mistakenly relies on the *Cox v. American Cast Iron Pipe Co.,* 847 F.2d 725 (11th Cir. 1988). Significantly, in that case, the class action litigation had been ongoing for **more than 15 years** when the defendant first moved to disqualify plaintiffs' counsel. It is axiomatic that a motion to disqualify should be made with reasonable promptness

after a party discovers the facts which lead to the motion. *Id.* at 729 (citations omitted).

Here, there is no evidence of an intentional waiver of by the Receiver. The matters about which the Receiver's counsel dealt with respondent law firm were ministerial and tangential, such as whether the firm would agree to accept service of a document subpoena, or the Receiver's time-line for vacating the Commodities Online premises. These acts did not arouse any suspicion of an attorney-client conflict of interest, especially because counsel, for the most part, appeared to be acting in cooperative posture. Therefore, Receiver's counsel did not examine the attorney-client relationship until it became obvious to Receiver that the respondent law firm was acting contrary to the interests of the receivership estate, particularly in connection with filings after the Court entered the Disgorgement Order against Howard and Sutton Capital.

Moreover, there is no prejudicial effect on James Howard, or any other person or entity. Notably, Howard appeared for the disgorgement hearing with other counsel (who refused to file an appearance). The other entities that have been subpoenaed can obtain counsel, if needed, to attend the depositions and produce the requested documents.

Although, the current partners of the Law Firm assert they are in litigation with Ms. Garcia, their former partner, due to accounting conflicts, this does not abate or resolve the attorney-client conflict of interest problem that these attorneys face.

## II.     Counsel as Witness

It is undisputed that Ms. Ivy, together with Ms. Garcia, traveled to Manzanillo, Mexico, and took photographic evidence of some amount of iron ore. Whether as counsel for Commodities Online and/or Louis Gallo, their testimony will be essential in further proceedings in this matter. Furthermore, as the Receiver continues the investigation as to the seemingly excessive amount of funds paid to the prior law firm of Garcia, Ivy and Miller, all the attorneys

are necessary witnesses. Under Rule 4-3.7, because these attorneys are necessary witnesses, they should be disqualified, as argued in the Receiver's original motion.

### III.  Respondent's Request for Attorney's Fees is Unfounded

In its caption to its response and in the concluding sentence in the responsive brief, counsel moves for sanctions and attorney's fees; yet counsel offers no legal or factual basis for such a claim. The Receiver makes this motion in good faith acting on behalf of the victim-investors and in order to comply fully with the Receivership Order. Respondents' should not be rewarded for their failure to comply with the Rule Regulating the Florida Bar. In sum, there is no basis for awarding such fees or sanctions.

**CONCLUSION**

In conclusion, upon a sufficient showing at a hearing that the responding law firm of Ivy, Miller & Walker, P.A., are subject to an attorney-client conflict and should be disqualified from representing defendant Howard and Sutton, as well as from representing other former officers or employees of Commodities Online, or entities related to Commodities Online, or other entities owned or controlled by former officers of employees of Commodities Online, the Receiver asks the Court for such an order; and (b) such other and further relief as the Court deems necessary.

    Respectfully submitted,

    MANDEL & MANDEL LLP
    1200 Alfred I. duPont Building
    169 East Flagler Street
    Miami, Florida 33131
    Telephone: 305.374.7771
    Facsimile: 305.374.7776
    nsmandel@mandel-law.com

    By: /s/ Nina Stillman Mandel
    NINA STILLMAN MANDEL
    Florida Bar No.: 843016

            CAMELLIA NORIEGA
             Admitted Pro Hac Vice


            BARCLAY CALE, P.A.
            169 East Flagler Street, Suite 1200
            Miami, Florida 33131
            Miami, Florida 33131
            Telephone: (305) 416-3611
            Facsimile: (305) 416-3612
            bcale@calelaw.com

            *Counsel for the Receiver, David S. Mandel*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that a true and correct copy of the foregoing was filed by CM/ECF this 28th day of September, 2011.


            /s/ Nina Stillman Mandel
            NINA STILLMAN MANDEL